[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The plaintiff is a native of Brazil who came to this country in 1980. The defendant is a native of this country who met the plaintiff in 1980 when they were both attending a conference of ministers in California. The defendant persuaded the plaintiff to come to this country where he said he would provide a house for her and support her, and on those promises, she came to this country although she had very CT Page 1095 little if any knowledge of English.
The parties were married in June of 1980, and they have one child issue of the marriage, Rebecca, born in August of 1981.
Both parties worked from the time of the marriage until this last year, the plaintiff steadily and the defendant sporadically. The plaintiff also took time off at the time of the birth of Rebecca and after her birth worked part time until the child was old enough for day care. She had to provide baby-sitters when she worked full time because the defendant also worked full time at the time and even when he did not, he did not provide the care the child required.
Initially, the house the parties bought was paid for by a loan from the defendant's relatives and the earnings of both parties. Plaintiff asserts that she had $3,000 when she came to this country and the defendant had $2,000. The defendant did pay for the wedding and the reception and thereafter provided support for her but would not give her any money.
For the first ten years of the marriage, from 1980 to 1990, the defendant worked at Wayside Furniture earning as much as $50,000 a year. However, during that time, the plaintiff taught herself English by carrying a dictionary with her, went to school on weekends and nights and received first her A.B. degree and then her M.S. degree, and as a result, her earnings steadily increased until now they are between $40,000 and $50,000 a year.
On the other hand, the defendant at first was earning so much that he saw no need to obtain his GED (he had never completed grammar school, reaching only the sixth grade). After he left his job at Wayside, expecting at better one at Siemans which did not materialize, he had periods of unemployment and employment at considerably less income than he had had previously at Wayside. In the last year, for example, his total earnings were $27,000 gross.
On the surface, it does appear that the more independent the plaintiff became, the less the defendant provided for her or for Rebecca. During all his job changes, some of which were voluntary and some of which resulted from terminations, he seemed to take time off frequently just because he did not feel like going to work. While this case has been pending, his behavior has been somewhat bizarre, taking off, for example, for a week prior to the CT Page 1096 beginning of the trial. He said he was taking it off for meditation and prayer but it turned out he took off to go to New Jersey and among other things asked a salesman to send him an order slip for a Cadillac which he looked at. He also, between the time of the ending of the trial or even while the trial was pending, made arrangements to go to California for a conference for five days in January. At the same time, he stopped paying one half the mortgage which he had previously paid so that the December payment was in default, and the plaintiff paid his share to keep it from being in default. The defendant has also failed to pay the January payment as well.
Moreover, while the defendant has complained bitterly that he could not afford a lawyer, after having been given several continuances in order to try to find one, his excuse at the time was that he did not have the money. However, it turns out that he had received over $2,000 from an insurance company in December for damage to his car, which was not repaired. He had also had earnings which would have been sufficient at least for a retainer. His excuse now was that he did not want to use whatever he had including the equity in the house, which was in his name, to retain a lawyer because that would be taking money from his child, Rebecca, whom he was now not supporting.
It does seem that the breakdown of the marriage really resulted from the plaintiff becoming independent from a considerably dependent position at the start of the marriage, and the defendant reacting by, in effect, reducing his responsibilities in the marriage, both financially and otherwise.
While the plaintiff relies very much on a couple of bizarre behaviors by the defendant — allegedly taking a woman to his home while she was away for a weekend and also renting a motel room with someone else which he strenuously denies — it does appear to the court that the inequality in their economic positions was really the cause of the breakdown. Therefore, the court will find this to be a no fault divorce.
The parties have been living in the marital home together with Rebecca, and the relationship has become tense with the defendant eating out most of the time and coming home late at night when he came home at all. He claims that he sleeps there every night but that he does not eat there. The plaintiff has asked him to leave but he refused because he considers this his house since it is in his name. The court urged him to move out at CT Page 1097 the last hearing before Christmas; however, he reported that he did not make any attempt to do so because he did not want to do so and wanted to live in the house. Since he is only there to sleep, this seems a somewhat strange attitude but it amounts to a defiance of the court's request.
Consequently, the request, which has become a court order in the meantime, will be redenominated a court order with this judgment, and he will be given a period of time to remove himself from the premises.
However, removing himself from the premises does not remove his interest in the house, and that matter will be discussed hereafter.
While the court believes that both parties are somewhat to blame for the breakdown, it is really due to circumstances, to some extent, beyond their control, at least emotional control. There is the fact that the plaintiff did attempt reconciliation through involving their pastors in an attempt to work things out; however, the defendant refused to follow their recommendations and continued in his course of behavior of absenting himself from the home, not contributing anything but half the mortgage to the household expenses or to the support of their daughter.
The plaintiff is asking for $1.00 a year alimony and $100.00 a week child support based on the defendant's last year's earnings. She has provided sufficient backing for this request in the form of a child support guideline worksheet.
Given the defendant's earning capacity as demonstrated in his work for Wayside, this child support figure is a minimum and can, of course, be increased once his earnings do reflect his capacity.
The parties have stipulated that they shall have joint custody of the minor child Rebecca with the defendant to have visitation as set forth in the stipulation which has been approved and made an order of this court and is appended to this opinion.
The major issue is over the distribution of the equity in the house. In the court's opinion, since both contributed to that house almost equally, the court believes that the equity should be divided equally between them.
Having considered all of the provisions of § 46b-81 and CT Page 1098 § 46b-82 of the General Statutes, the claims of the parties and the evidence presented, the court makes the following findings and orders:
1. The parties were married in June of 1980, and the marriage has broken down irretrievably and it is hereby dissolved.
2. Both parties have lived in this state for at least a year prior to the institution of this action.
3. Neither party has received local, state or federal aid other than unemployment compensation, and neither one is receiving any aid of any kind at the present time.
4. There is one minor child issue of the marriage, Rebecca, born in August, 1981.
5. The parties have stipulated that they shall have joint custody of Rebecca with primary residence awarded to the plaintiff mother. They have also stipulated that the defendant father shall be entitled to visitation with the minor child at least twice per month at a time and duration to be chosen by the minor child. The stipulation has already been approved and is hereby entered as an order of this court and a part of this judgment and it is appended hereto.
6. The defendant shall pay the plaintiff $1.00 a year alimony until the first to occur of the following events: her death, cohabitation within the meaning of the statutes or remarriage.
7. The defendant shall pay the plaintiff $100 a week as child support until the minor child, Rebecca, is 19 years of age or graduates from high school, whichever occurs first.
8. The plaintiff shall have exclusive possession of the marital home, and the defendant is hereby ordered to vacate the home within three weeks of the date of this order given the fact that he was ordered to vacate it within four weeks at the last hearing.
9. Ninety (90) days before the minor child reaches the age of 19 or graduates from high school, whichever first occurs, the parties shall put the marital home on the market for sale at a price either agreed to by them or set by a real estate CT Page 1099 broker, or if there is no agreement or no acceptance of the broker's determination, each party shall select a broker and the two brokers shall pick a third broker whose decision shall be final as to the price at which the house should be sold.
10. The net proceeds from the sale of the house, after payment of all broker's commissions, normal costs of closing, attorneys fees, and any costs for major repairs, shall be divided equally between the parties.
11. The defendant shall cooperate in effectuating the sale by signing whatever documents are necessary for that purpose.
12. Prior to the sale of the house and while the plaintiff and Rebecca are living in it, the plaintiff shall be responsible for paying the mortgage and all of the expenses of maintaining the same. If she changes her mind about living in it, the house should be immediately placed on the market for sale.
13. Any major repairs which may be made at the plaintiff's request shall be paid equally by the parties and the amount thereof deducted from the gross receipts from the sale of the property. The plaintiff shall be responsible for minor repairs which are defined as any repairs costing less than $500.
14. The parties shall share equally in the responsibility for the credit card liabilities. The defendant shall be responsible for the tax liabilities as well, and the plaintiff for the other liabilities listed on her affidavit.
15. The plaintiff shall continue to provide hospital and medical insurance provided by her company for Rebecca, but the defendant shall be responsible for any unreimbursed medical, hospital, dental, and psychiatric expenses incurred by or on behalf of Rebecca.
16. The defendant shall make an application for term life insurance in the amount of $50,000 for the benefit of the minor child. Failure to obtain this insurance shall be excused only if he is rejected for a mental or physical condition. The defendant shall provide the plaintiff with any authorization she may need to verify his having obtained CT Page 1100 this insurance.
17. The defendant shall pay one half of the mortgage through January, 1997, and shall reimburse the plaintiff for any mortgage payments she made for that month and the previous one up to 50 percent thereof.
18. Each party shall continue to possess the vehicle currently in his or her possession and indemnify or hold the other party harmless from any liability thereon.
19. The defendant shall indemnify and hold the plaintiff harmless from any future liability to the IRS or the Connecticut Department of Revenue Services from whatever source derived.
20. Each party shall retain the IRA profit sharing plan and/or retirement plan in his or her name.
21. A wage execution order shall issue for payment of the support order.
Judgment shall enter in accordance with the foregoing findings and orders.
MARGARET C. DRISCOLL JUDGE TRIAL REFEREE